IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FOTIOS MOUSTAKAS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-7563 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| JEREMY MARGOLIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's motion for attorney's fees [59]. For the reasons set forth below, the motion is denied.

**I.      Background**

Plaintiff Fotios Moustakas ("Plaintiff") brought suit against various members of the Illinois Concealed Carry Licensing Review Board ("ILCCLRB") and the Director of the Illinois State Police (collectively, "Defendants"), arguing that their denial of his application for a license to carry a firearm abridged his constitutional right to due process. The Firearm Concealed Carry Act, 430 ILCS 66/1, *et seq.*, delineates the process for obtaining a concealed carry license in Illinois. An applicant is eligible only if he or she meets certain threshold criteria, including being over 21 years of age, having a valid Firearm Owner's Identification (FOID) Card, and not having been convicted of certain crimes. See 430 ILCS 66/25. Even if an applicant checks all of these boxes, any law enforcement agency may object "to a license applicant based upon a reasonable suspicion that the applicant is a danger to himself or herself or others, or a threat to public safety." 430 ILCS 66/15. The ILCCLRB then reviews the objections and votes on whether to grant a license notwithstanding law enforcement's concerns. 430 ILCS 66/20. Unsuccessful applicants may appeal the decision,

but "all materials considered by the Board shall be exempt from inspection except upon order of a court." 430 ILCS 66/87; ILCS 66/20(d).

Here, Plaintiff alleged that he was otherwise qualified for such a license, but was rejected because a law enforcement agency objected to his application. Plaintiff was notified of this objection and provided with summaries of the bases of the objection—he had apparently been arrested for assault and battery several times in the 1990s and 2000s. Plaintiff filed this suit pursuant to 42 U.S.C. § 1983 and *Ex parte Young*, 209 U.S. 123 (1908), claiming that his inability to review *all* of the ILCCLRB materials violated his due process rights. He sought, *inter alia*, equitable relief requiring that he be provided an opportunity to review the full case files before his application is formally denied.[1] See generally [9]; [10]; [26]. He also proceeded under the state's Freedom of Information Act but apparently was unable to obtain many of the documents through that channel.

This Court never ruled on the merits. Before a motion to dismiss or answer was filed, the Court referred the case to Magistrate Judge Finnegan for the purpose of holding a settlement conference. [22.] Although no settlement was reached, Defendant voluntarily provided most of the law enforcement files that the ILCCLRB had reviewed (in lightly redacted form) in June 2018. See generally [67.] As part of this document dump, Defendants also expressed their willingness to provide complete, unredacted files upon the completion of a confidentiality order. [*Id.* at 2.] The Court entered such an order on December 19, 2018, see generally [32], and Defendants provided Plaintiff with the complete, unredacted files in January 2019. See generally [68]. Although Plaintiff suggested he wanted further relief from the Court, [40 at 1], the parties ultimately agreed

---

[1] This is not the first time that Plaintiff has challenged the constitutionality of Illinois concealed carry licensing regime. See generally *Berron v. Illinois Concealed Carry Licensing Review Board*, 825 F.3d 843 (7th Cir. 2016) (rejecting Plaintiff's facial challenge to the licensure requirement and regulatory infrastructure).

2

that the merits of the case had been resolved, because Plaintiff had been provided with all of the information he had requested. [45.] In the parallel state administrative proceeding, Plaintiff claims to have successfully appealed the ILCCLRB's decision and has confirmed that he was granted a concealed carry license.

Now Plaintiff seeks attorney's fees pursuant to Rule 54 [59]: at least $20,550 for the actual case, and an additional $52,230 for "fees on fees"—that is, his attorneys' time in litigating the fees issue.

**II.     Analysis**

In order to entice competent attorneys to prosecute civil rights cases, Congress enacted 42 U.S.C. § 1988, pursuant to which a "prevailing party" in a § 1983 action is entitled to "reasonable" attorneys' fees. See *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Defendants argue that (a) Plaintiff was not a prevailing party and (b) in the alternative, the fees are not reasonable. Because Plaintiff was not a prevailing party, the Court does not address the latter issue.

In *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598 (2001), the Supreme Court considered the definition of "prevailing party." See *Buckhannon*, 532 U.S. at 602. The *Buckhannon* decision disapproved the then-widely used "catalyst" theory, "which posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601–02. Now, "to be a 'prevailing party' a litigant must have obtained a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief." *T.D. v. LaGrange School Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003) (citing *Buckhannon*, 532 U.S. at 603–04). Thus, defendants can sometimes strategically avoid the payment of attorney's fees by voluntarily changing their behavior while a lawsuit is ongoing. See, *e.g.*, *Bingham v. New Berlin School Dist.*,

3

550 F.3d 601, 604 (7th Cir. 2008) (collecting criticisms of *Buckhannon* as it applies to special education litigation) ("A school district can delay providing expensive educational services as long as possible and hope that the parents either tire of the battle, re-matriculate elsewhere, or that the child ages out of the school system. By doing so they do not risk having to pay the opposing side's attorneys' fees at the end of the protracted battle, provided they capitulate sometime prior to judgment.")

Prevailing party status is conferred by "concrete judgments that alter legal relations." *Richardson v. City of Chicago, Ill.*, 740 F.3d 1099, 1102 (7th Cir. 2014). A settlement may grant prevailing party status if it carries the court's imprimatur. *Buckhannon*, 532 U.S. at 605. The prototypical example is a consent decree, or the equivalent thereof. *Id.* Thus, for example, "[w]here a settlement agreement is embodied in a court order such that the obligation to comply with its terms is court-ordered, the court's approval and the attendant judicial oversight (in the form of continuing jurisdiction to enforce the agreement) may be ... functionally a consent decree." *T.D.*, 349 F.3d at 478 (alterations in original) (quoting *Smyth v. Rivero*, 282 F.3d 268, 281 (4th Cir. 2002)). Likewise, a "*stipulated settlement* could confer prevailing party status * * * where it (1) contained mandatory language, (2) was entitled "Order," (3) bore the signature of the District Court judge, not the parties' counsel, and (4) provided for judicial enforcement." *John T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 558 (3d Cir. 2003) (citation and quotation marks omitted and emphasis in original); see also *T.D.*, 349 F.3d at 478–79 (same).

Even if the present litigation catalyzed the disclosure of the ILCCLRB records, the Court did not enter a concrete judgment that altered legal relations. Because the Court did not rule on the merits, did not enter a consent decree, or did not otherwise judicially sanction relief, Plaintiff is

4

not a prevailing party. Rather, Defendants voluntarily changed their behavior prior to the entry of anything resembling a judgment.

Plaintiff offers several unpersuasive arguments for avoiding *Buckhannon*. First, Plaintiff highlights that he got exactly what he wanted—access to the documentation that the Board reviewed in considering his application, and (in a separate state administrative proceeding) his concealed carry license. This is a good result for him, but it has nothing to do with *Buckhannon*. As the Seventh Circuit has repeatedly stressed, what matters is not the degree of success, but the nature of the court's involvement. *Bingham*, 550 F.3d at 604 (defendants can avoid paying attorney's fees, "provided they capitulate sometime prior to judgment"); *Richardson*, 740 F.3d at 1102 ("Costs (and fees) do not follow moral victories, however; they depend on concrete judgments that alter legal relations.").[2]

Second, Plaintiff argues that this Court's entry of a confidentiality order was a consent decree or the equivalent thereof. Preliminarily, the confidentiality order is not a settlement and therefore is not the equivalent to a consent decree. See *Walker v. Calumet City, Ill.*, 565 F.3d 1031, 1035 (7th Cir. 2009) (a court order that recites defendant's representations is not a stipulated settlement or consent decree, and therefore does not establish prevailing party status). Moreover, the confidentiality order did not contain mandatory language regarding Defendants' provision of any particular documents and did not provide a mechanism for judicial enforcement with regard to that key provision. See *id.* at 1035 & n.2 ("dismissal order that enshrines the representations

---

[2] Plaintiff's attempt to analogize this case to *Anheuser-Busch, Inc. v. Schnorf*, 2012 WL 1068765 (N.D. Ill. Mar. 29, 2012), also misses the mark. In that case, this Court refused to award attorney's fees because the plaintiff achieved a "Pyrrhic victory," in that it won a judgment on a threshold issue, but ended up worse off as a result. *Id.* at *9. But *Anheuser-Busch* simply did not consider *Buckhannon*, because the Court had entered partial summary judgment in the plaintiff's favor. *Id.* at *8 n.5 (explaining that *Buckhannon* and its progeny "d[id] not figure heavily into the Court's analysis * * * [b]ecause there was a final judgment on the merits").

5

made by the [defendant]" did not give rise to attorney's fees where it "gave no option for [plaintiff] to seek enforcement" and did not "*command*" the defendant to do anything); *cf. Peterson v. Gibson*, 372 F.3d 862, 866–67 (7th Cir. 2004) (holding that plaintiff was not a prevailing party, notwithstanding judgment that her rights were violated, because the judgment did not afford judicial relief and the ultimate settlement that closed the case lacked judicial imprimatur).[3] The confidentiality order here merely recited that Defendant was providing Plaintiff with documentation "voluntarily" and required that Plaintiff keep the materials confidential. Because it neither commanded Defendants to provide the documents nor provided an enforcement mechanism to Plaintiff, it was not a consent decree or equivalent thereof. See generally [32]; see also *Walker*, 565 F.3d at 1035.

Plaintiff's citation to *American Oversight v. U.S. Department of Justice*, 375 F. Supp. 3d 50 (D.D.C. 2019), also is unavailing. In that case, which dealt with the federal Freedom of Information Act (FOIA), the trial court issued several orders blessing the parties' timeline for turning over documents. Unlike in this case, however, those orders required the government's compliance with the timeline (and thus disclosure). *Id.* at 63 ("Regardless of who proposed the schedule, '[o]nce an order has been adopted by the court, *requiring the agency to release documents*, the legal relationship between the parties changes.'") (quoting *Campaign for Responsible Transplantation v. Food & Drug Admin*, 511 F.3d 187, 197 (D.C. Cir. 2007) (emphasis in original)).[4] Here, however, the Court's order did not require Defendants to disclose

---

[3] Plaintiff argues that Defendants were, in fact, ordered to mark the documents they wanted to keep subject to the confidentiality order. But such a contingent administrative requirement did not materially alter the legal relationships between the parties such that Plaintiff can be said to have prevailed. *Walker*, 565 F.3d at 1035–36.

[4] It also bears noting that the federal statute in question authorizes attorney's fees in the face of "a voluntary or unilateral change in position by the agency." 5 U.S.C. § 552(a)(4)(E)(ii). Section 1988 has no such

any document, and therefore did not confer prevailing party status. *Walker*, 565 F.3d at 1035 (explaining that an order that recites a party's promise to do something is different from a command).

Third, Plaintiff argues that the confidentiality order satisfies 430 ILCS 66/20(d), which provides that "all materials considered by the Board shall be exempt from inspection except upon order of a court." Plaintiff argues that this statute forbade Defendants from releasing any of the underlying documents except by court order. See, *e.g.*, [74 at 4–5 ("The plain text of the Section amounts to a complete prohibition on any inspection of any person, and no exception is made * * * except 'upon order of a court.'"); *Id*. at 20 ("The Defendants possess no independent right to pick and choose what to disclose and what to retain undisclosed in defiance of * * * 430 ILCS 66/20(d).")]; see also [59 at 11]. According to Plaintiff, this Court's confidentiality order satisfied this statute, and therefore altered the parties' legal relationship in allowing the inspection of some documents, giving Plaintiff prevailing party status. Putting aside the question of whether the Court's confidentiality order was a "concrete judgment," see *Richardson*, 740 F.3d at 1102, there are at least two problems with this argument. First, Plaintiff ignores the fact that Defendant unquestionably divulged dozens of pages of documents in June 2018, months before this Court's confidentiality order. See generally [67]. Thus, the Court's December 2018 order did not alter legal relationships, because Defendants were apparently allowed to share ILCCLRB documents in the absence of a court order notwithstanding 430 ILCS 66/20(d).[5] Second, Plaintiff's reading stretches

---

provision. It is therefore unclear (and probably doubtful) that *American Oversight* can be analogized to a case such as this, where the Court's order reiterated that the state's change in position was voluntary.

[5] Plaintiff seemingly recognizes that Defendants' unordered provision of documents undercuts this claim and attempts to sidestep it by arguing that he could not proceed with his state administrative appeal until he got all of the requested documentation. This was Plaintiff's argument on the merits, but it does nothing to advance his claim for fees. Indeed, Plaintiff's fees argument is premised on Defendants supposed *complete* inability to provide ILCCLRB documents absent a court order, which is belied by the June 2018 document

the meaning of "except upon order of a court." The confidentiality order merely required that documents, upon disclosure, must be handled with care—not that any document(s) *must* or even *may* be divulged. Because the Court's order did not purport to alter any document's availability, 430 ILCS 66/20(d) never came into play, and no legal relationship was meaningfully altered.[6]

Fourth, relatedly, Plaintiff argues that if all of the above is true, then it suggests that Defendants acted extra-legally, either by refusing his initial FOIA requests, or by giving him the requested documents in the absence of a court order. Maybe so, but that is neither here nor there with regard to whether *this Court* provided its imprimatur to Plaintiff's relief. Plaintiff's accusations of tyranny and lawlessness may be cause for concern—either that he was given the "run-around" or that the state employees handling such requests do not apply a consistent standard—but a Rule 54 motion for fees is not the place to explore that concern.

Fifth, to the extent that Plaintiff argues the merits—that the processes for obtaining a concealed carry license fail to afford applicants due process—these allegations are irrelevant to the fees issue. Even if that characterization is true, the Court never considered, much less ruled on, the merits of this case. For better or for worse, under *Buckhannon* and its Seventh Circuit progeny,

---

dump. Likewise, Plaintiff's argument that he was unable to obtain some documents included in the June production through Illinois's FOIA mechanism undercuts his claim for fees, as it underscores the ILCCLRB's authority to discretionarily provide confidential materials *prior to the entry of the confidentiality order*. See [59 at 11 ("Finally, it is very difficult to imagine how the Board, might have sent a FOIA request to itself and disclosed the page at DEF000038 to the Plaintiff consistent with 430 ILCS 66/20(d) without an order of court.") (discussing document that was disclosed in June 2018, prior to the entry of the confidentiality order)].

[6] Plaintiff makes a sub-argument that the court's confidentiality order implicitly required the provision of the documents, because otherwise Defendants would have unilateral and unbridled discretion about when to provide data. This would, according to Plaintiff, undermine the purposes of the Illinois FOIA statute. This is all very in-the-weeds for an attorney's fees question in a case that had little to do with FOIA, but the posture of this case belies this argument. Here, Defendants unilaterally offered to provide the underlying documents subject to a confidentiality order, and the Court was not asked to (and did not) review Defendants' statutory authority for such an offer under Illinois law. Thus, even under Plaintiff's preferred reading of Illinois's codebook, Defendants retain unilateral discretion about when and how to make ILCCLRB documents available, and 430 ILCS 66/20(d) is nothing but a paper barrier.

the Court cannot award attorney's fees on this posture. As in *Bingham*, because Defendants "capitulate[d] sometime prior to judgment," Plaintiff is not a "prevailing party" and has no entitlement to his fees. 550 F.3d at 604.

### III. Conclusion

For the reasons set forth above, Plaintiff's motion for attorney's fees [59] is denied.

Dated: May 1, 2020

Robert M. Dow, Jr.
United States District Judge